77 N.J. Super. 42 (1962)
185 A.2d 254
STATE OF NEW JERSEY, PLAINTIFF,
v.
ANDREW SCROTSKY, DEFENDANT.
Superior Court of New Jersey, Essex County Court, Law Division.
Decided October 31, 1962.
*44 Mr. Dino D. Bliablias, Assistant Prosecutor of Essex County, for the State of New Jersey (Mr. Brendan T. Byrne, Essex County Prosecutor, attorney).
Mr. Robert G. O'Brien, for defendant.
MASUCCI, J.C.C.
This matter came on for the taking of testimony pursuant to a remand by our Supreme Court to make a finding "as to the validity of any search and seizure which produced evidence upon which the defendant's conviction was predicated." State v. Scrotsky, 38 N.J. 14 (1962).
The evidence, taken at the trial and at the instant hearing, relevant to search and seizure is not in dispute.
The defendant on August 23, 1959 and at all other pertinent dates occupied a three room apartment on the second floor of No. 60 Oriental Street, Newark, New Jersey, having rented the same from Mrs. Seymour, the person robbed of personal property. It was a furnished apartment. The defendant claims he lived there with his wife, Mrs. Scrotsky (sometimes referred to as Wanda), that he had exclusive possession of the apartment with his wife, and that he never gave permission to anyone, including Mrs. Seymour, to enter his apartment. Although Mrs. Seymour had a key to the apartment, there seems to be no contention that she had the right to enter the apartment, especially for the purpose of searching the apartment and seizing any of her property. At any rate, there was no evidence, excepting the key to the apartment, of any right of entry on the part of Mrs. Seymour.
This court, therefore, finds that Mrs. Seymour, in renting the apartment, to the defendant, did not reserve any right of entry to the apartment during the term of said letting.
*45 This court further finds that on August 23, 1959 the home of Mrs. Seymour was burglarized and robbed of one watch, kitchen utensils, sheets and a blanket, and that prior thereto, about 6 P.M. on August 23, 1959, while leaving her home, Mrs. Seymour saw the defendant at her home. Upon her return shortly afterwards she found her home had been broken into and called the police. Sergeant O'Connor responded, and while he was there she saw the defendant go over the fence of her yard, carrying a duffel bag. Both the sergeant and Mrs. Seymour gave chase but lost him. They returned to the building and were in the common hallway of the defendant's and the victim's apartment; the door of the defendant's apartment was open and the sergeant glanced toward the apartment but did not enter.
About 10 P.M. on the same day two police officers and the victim went to the defendant's apartment. He was not there, but Mrs. Scrotsky, who identified herself as the wife of the defendant, was there. They entered the apartment and saw but did not take any of the stolen property of Mrs. Seymour.
Again, on August 24, 1959, Mrs. Seymour and the same officers returned to the defendant's apartment about 7 P.M. and again saw but did not take any of the stolen property. That evening Mrs. Seymour put padlocks on the door of the apartment but did not enter.
On August 25, 1959 Detective Gellerman and Mrs. Seymour entered the defendant's apartment and, in the presence of said detective, Mrs. Seymour took her stolen property. Detective Gellerman made a list of the articles taken and asked her to bring the articles to police headquarters. Neither the defendant nor Mrs. Scrotsky was present at the time. None of the police officers took any of the stolen property, the items were taken by Mrs. Seymour with their knowledge.
There was no warrant for the arrest of the defendant or any search warrant issued and outstanding at any of the times of entry into the defendant's apartment or at the time of the retaking of the stolen property by Mrs. Seymour, although during said period the police were seeking the defendant for *46 the purpose of arresting him and did make an arrest of said defendant later.
The defendant contends that even though the evidence was actually taken by Mrs. Seymour, the rightful owner, because the police officer was present she acted as an arm of the police in reducing the articles to possession; and inasmuch as the officer did not have a search warrant, such repossession constituted an unlawful seizure and the evidence so obtained was inadmissible. Moody v. U.S., 163 A.2d 337 and Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (D.C. Mun. Ct. App. 1960), (1921).
With all due respect to the cited authorities, it seems that the right of an owner of stolen property to follow and reclaim his property wherever it might be found, was apparently neither raised nor considered by the court.
It is fundamental that a person may follow and reclaim his stolen property wherever he may find it. 42 Am. Jur. § 51, p. 227.
In addition, the facts in the instant case are distinguishable from those in defendant's cited authorities. Here the property was taken by Mrs. Seymour by virtue of her ownership and right of possession of the property; she retained possession and control; she did not pass over possession to the police at any time except later, when necessary to list them and when required as evidence. Nor is there any evidence that she took possession as an arm of the law. On the contrary, the officers had seen the property on at least two previous occasions and had not taken possession. Mrs. Seymour repossessed herself of the property without any request or suggestion by any of the police officers. The incidental use, after she had acquired lawful possession, did not constitute either a search or seizure of the property by the officers.
The next question to be considered, assuming there was a search and seizure, is whether the same may be justified as incidental to an arrest. Admittedly, there was no warrant issued and outstanding during the times the officers were looking for the defendant and at the time of his arrest.
*47 Unquestionably larceny of a person's goods is a felony. Leeman v. Public Service Ry. Co., 77 N.J.L. 420 (Sup. Ct. 1909). At common law a police officer has a right to arrest, without a warrant, one whom he suspects to be guilty of a felony, provided he has reasonable cause to suspect that the person arrested has committed the felony. In the case of an arrest by a private person, there must be proof that a felony was actually committed whereas an officer may arrest upon reasonable suspicion that a crime has been committed and that the person arrested is the person who committed the suspected crime. Brown v. State, 62 N.J.L. 666 (E. & A. 1898), affirmed 175 U.S. 172, 20 S.Ct. 77, 44 L.Ed. 119 (1899).
In State v. Smith, 37 N.J. 481, 493 (1962), Chief Justice Weintraub, in commenting upon what constituted a felony, stated among other things, "a felony is deemed to be an offense for which a sentence to the state penitentiary could be imposed." The crime here charged was breaking and entering or entering without breaking with intent to steal, etc., a high misdemeanor for which the defendant was subject to a sentence to imprisonment up to seven years or a $2000 fine, or both.
Whatever "felony" may encompass or whatever its essential elements, there can be little question that the crime charged, now classified as a high misdemeanor, constitutes a common law felony.
In the light of the testimony above referred to, the officers had reason to believe a crime had been committed and by the defendant, and, therefore, the ultimate arrest of defendant was a lawful one.
The next question naturally follows: If the taking of her property by Mrs. Seymour is attributable to the officers, was it incidental to the ultimate arrest? It must be remembered that the officers had either personal knowledge of the defendant's involvement in the crime charged or reliable knowledge received from Mrs. Seymour, or a combination of both; that they were under the impression that a warrant for *48 the defendant's arrest was outstanding and that their appearance at the defendant's home on the several occasions was with the purpose of finding and arresting him. In the course of such efforts, if they came across the property stolen, it was incidental to their efforts in locating and arresting him and, therefore, incidental to the ultimate arrest.
In State v. Evans, 75 N.J. Super. 319 (App. Div. 1962), Lewis, J.A.D., in analyzing Chief Justice Weintraub's opinion in the Smith case considering the effect to be given the case of Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) on prior tried cases, stated,
"* * * its retrospective effect, however, is circumscribed by potential limits and is subordinate to `essential justice both to the individuals and to the community'; * * * `Hence, it may be that * * * the rule of exclusion will be confined to situations in which bad faith or indifference to constitutional right is palpable.'"
Clearly, the officers in the instant case acted in good faith. Neither they nor Mrs. Seymour, the owner, took the property on several occasions prior to the actual taking, and when it was finally taken it was done, without even a suggestion by the officers, by a person who was the unquestioned owner of the property and had an absolute right to take and retain possession thereof.
This court finds that there was no seizure of the property by the officers; that if the taking by Mrs. Seymour be attributable to the officers, it was incidental to an arrest; that the taking of said property by Mrs. Seymour was within her absolute right; that the officers acted throughout in perfect good faith, without any indifference to the constitutional rights of the defendant, and that under the meaning and spirit of the Smith and Evans cases, supra, and all the circumstances in the instant case, "essential justice to both the defendant and the community" will best be served by the nonapplication of the Mapp case.