QUESTIONS:
1. Do the provisions of s. 394.463, F.S., exclude the emergency admission to a receiving facility of a person who has criminal charges pending against him?
2. Do the provisions of s. 394.463 exclude the emergency admission of an incarcerated person?
3. Do the provisions of s. 394.463 exclude the emergency admission of a federal prisoner?
4. Is a United States marshal or his deputy a law enforcement officer within the meaning of s. 394.463?
5. Is the State of Florida responsible for the cost incurred if an indigent federal prisoner is admitted to a receiving facility under emergency conditions pursuant to s. 394.463?
6. Is a United States marshal or his deputy a peace officer under Florida law?
SUMMARY:
The provisions of s. 394.463, F.S., do not exclude the admission of a federal prisoner to a receiving facility. Neither a United States marshal nor his deputy is a law enforcement officer within the meaning of s. 394.463. The State of Florida is not responsible for the cost incurred when a federal prisoner is admitted to a receiving facility pursuant to s. 394.463. A United States marshal is not a peace officer under Florida law.
STATEMENT OF FACTS:
A federal prisoner confined in the Duval County Jail under a contractual agreement with the Department of Justice attempted suicide by slashing his throat. The contract jail, fearing liability if the prisoner succeeded in this attempt, demanded that he be removed immediately. Two deputy marshals removed the prisoner and presented him for emergency admission at a receiving facility in Jacksonville pursuant to s. 394.463, F.S.
AS TO QUESTIONS 1, 2, and 3:
Your first three questions are answered in the negative. Section394.463, F.S., as amended by Ch. 73-133, Laws of Florida, provides in pertinent part as follows:
"394.463 Admission for emergency or evaluation. — (1) EMERGENCY ADMISSION. — (a) Criteria. — A person may be admitted to a receiving facility on emergency conditions if there is reason to believe that he is mentally ill and because of his illness is: 1. Likely to injure himself or others if allowed to remain at liberty, or 2. In need of care or treatment and lacks sufficient capacity to make a responsible application on his own behalf, and an ex parte order is obtained authorizing the admission."
There is no language in the above-quoted statute that would exclude the emergency admission of an incarcerated federal prisoner with criminal charges pending against him. Indeed, I believe the statute evidences an unmistakable intent of the legislature that persons with criminal charges pending against them are just as eligible for emergency admission as anyone else. For example, paragraph 394.463(1)(d), providing for the release of the patient when further evaluation is unnecessary, states that such patient shall be discharged immediately ". . . unless the patient is under criminal charges, in which case he shall be returned to the custody of a law enforcement officer." See also identical language in s. 394.463(3), F.S. The legislative intent is abundantly clear: The statutory criteria for emergency admission to a receiving facility do not exclude incarcerated federal prisoners.
AS TO QUESTION 4:
This question is answered in the negative. Section 394.455(18), F. S., provides that:
"As used in this part, unless the context clearly requires otherwise: (18) "Law enforcement officer" means any city police officer, officer of the state highway patrol, sheriff, or deputy sheriff."
I do not believe that 28 U.S.C.A. s. 570 undercuts the position I have taken. That section provides:
"A United States marshal and his deputies, in executing the lawsof the United States within a State, may exercise the same powers which a sheriff of the State may exercise in executing the laws thereof." (Emphasis supplied.)
This statute has reference to the powers of a United States marshal when executing the laws of the United States and does not purport to authorize a marshal to execute the laws of a state. Your attention is directed to 28 U.S.C.A. s. 569 which sets forth generally the powers and duties of a United States marshal. Nothing therein authorizes a marshal to execute state laws.
In considering this question, the statutory definition of "law enforcement officer" must control unless a contrary intent clearly appears. Ervin v. Capital Weekly Post, Inc., 97 So.2d 464 (Fla. 1957); and Vocelle v. Knight Bros. Paper Co., 118 So.2d 664 (1 D.C.A. Fla., 1960).
The settled principle of statutory construction, expressio unius est exclusio alterius, is applicable. This rule simply means that when a statute enumerates certain things on which it is to operate or forbids certain things, it must be construed as excluding from its operation all things not expressly mentioned therein. Ideal Farms Drainage Dist. v. Certain Lands, 19 So.2d 234 (Fla. 1944). Simply put, a legislative direction as to how a thing shall be done is, in effect, a prohibition against its being done in any other way. Alsop v. Pierce, 19 So.2d 799 (Fla. 1944), en banc.
AS TO QUESTION 5:
This question is answered in the negative. The federal government is responsible for the cost incurred. This position finds support at 18 U.S.C.A. ss. 4002, 4006, and 4007. Section 4002, in pertinent part, provides as follows:
"s. 4002. Federal prisoners in State institutions; employment. For the purpose of providing suitable quarters for the safekeeping, care, and subsistence of all persons held under authority of any enactment of Congress, the Director of the Bureau of Prisons may contract, for a period not exceeding three years, with the proper authorities of any State, Territory, or political subdivision thereof, for the imprisonment, subsistence, care, and proper employment of such persons."
Section 4006 provides:
"s. 4006. Subsistence for prisoners. The Attorney General shall allow and pay only the reasonable and actual cost of the subsistence of prisoners in the custody of any marshal of the United States, and shall prescribe such regulations for the government of the marshals as will enable him to determine the actual and reasonable expenses incurred."
Section 4007 provides:
"s. 4007 Expenses of prisoners. The expenses attendant upon the confinement of persons arrested or committed under the laws of the United States, as well as upon the execution of any sentence of a court thereof respecting them, shall be paid out of the Treasury of the United States in the manner provided by law."
Another statute which is clearly indicative of congressional intent that the federal government should be financially responsible for the safekeeping, care, and subsistence of all federal prisoners is found at 18 U.S.C.A. s. 4042 which provides in pertinent part that:
"s. 4042. Duties of Bureau of Prisons. The Bureau of Prisons, under the direction of the Attorney General, shall — * * * * *
(2) provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise . . . ."
Similarly, 28 C.F.R. s. 0.95 provides:
"s. 0.95 General functions. Subject to the general supervision and direction of the Attorney General, the Director of the Bureau of Prisons shall direct all activities of the Bureau of Prisons, including: * * * * *
(b) Provision of suitable quarters for, and safekeeping, care, and subsistence of, all persons charged with or convicted of offenses against the United States or held as witnesses or otherwise.
18 U.S.C.A. s. 4086 provides:
s. 4086. Temporary safe-keeping of federal offenders by marshals.
United States marshals shall provide for the safe-keeping of any person arrested, or held under authority of any enactment of Congress pending commitment to an institution."
The state receiving facility should present its bill for the emergency treatment of a federal prisoner to the United States marshal. The bill should be paid in full by the marshal with a check drawn on the United States Treasury.
AS TO QUESTION 6:
This question is answered in the negative. The powers and duties of a United States marshal are set forth at 28 U.S.C.A. s. 569 which provides:
"s. 569. Powers and duties generally; supervision by Attorney General. (a) The United States marshal of each district is the marshal of the district court and of the court of appeals when sitting in his district, and of the Customs Court holding sessions in his district elsewhere than in the Southern and Eastern Districts of New York, and may, in the discretion of the respective courts, be required to attend any session of court. (b) United States marshals shall execute all lawful writs, process and orders issued under authority of the United States, including those of the courts and Government of the Canal Zone, and command all necessary assistance to execute their duties. (c) The Attorney General shall supervise and direct United States marshals in the performance of public duties and accounting for public moneys. Each marshal shall report his official proceedings, receipts and disbursements and the condition of his office as the Attorney General directs."
28 U.S.C.A. s. 570 provides:
"s. 570. Power as sheriff. A United States marshal and his deputies, in executing the laws of the United States within a State, may exercise the same powers which a sheriff of the State may exercise in executing the laws thereof."
Neither of the above-quoted statutes imposes any duty or grants any power to the United States marshal to enforce or execute any law of the State of Florida. The marshal and his deputies, in executing the laws of the United States within the State of Florida, may exercise the same powers that a Florida sheriff may exercise in executing the laws of this state.
Generally, a "peace officer" is a person designated by public authority to keep the peace and arrest persons guilty or suspected of crime. Vandiver v. Manning, 114 S.E.2d 121 (Ga. 1960). In the case of United States v. Bayley, 240 F. Supp. 649 (D.C. N.Y. 1965), the court held that inspectors of the Internal Revenue Service are not New Jersey peace officers within the meaning of the rules relating to arrest by peace officers. Similarly, in United States v. Heliczer, 373 F.2d 241 (2nd Cir. 1967), the court held that a New York statute relating to arrests by peace officers did not apply to federal narcotics agents, since they were not peace officers within the meaning of that statute. See also United States v. Viale, 312 F.2d 595 (2nd Cir. 1963). Based on the foregoing, it is my opinion that a United States marshal is not a "peace officer" under the laws of the State of Florida.
However, in matters of the public peace in which the national government is concerned, United States marshals and deputy marshals, acting within the scope of their authority, are national peace officers with all the statutory and common law powers appertaining to peace officers. The national public peace would be involved when, for example, an assault is made upon a judge in open court. The marshal and his deputies are both authorized and bound without any previous order or command to interpose and use sufficient force to quell the disturbance. This is true notwithstanding the fact that there is no specific provision of 28 U.S.C.A. s. 569 imposing that duty upon them. The marshal is required to attend court. But to what purpose shall he be in court if not to keep order and, if necessary, to protect the judges from violence by force or any other practicable means?
I think the very idea of a government composed of executive, legislative, and judicial departments necessarily comprehends the power to do all things, within the scope of its general governmental purposes and powers, necessary to preserve its existence and give it complete efficiency in all its parts. I think this necessarily includes the requisite power to enforce the laws and keep the national peace with regard to its officers while in the line of their duty. See generally In re Neagle, 39 F. 833 (Cir.Ct., N.D. Calif. 1889), affirmed 135 U.S. 1.