**UNITED STATES of America,**
**Appellee,**

v.

**Ricardo PEREZ, Defendant-Appellant.**

No. 319, Docket 24170.

United States Court of Appeals Second Circuit.

Argued March 6, 1957.

Decided April 1, 1957.

Paul W. Williams, U. S. Atty. for the Southern District of New York, New York City (William Scott Ellis and Maurice N. Nessen, Asst. U. S. Attys., New York City, of counsel), for appellee.

Thomas W. Hill, Jr., New York City, for defendant-appellant.

Before MEDINA and WATERMAN, Circuit Judges, and GALSTON, District Judge.

GALSTON, District Judge.

This is an appeal from a judgment of conviction entered in the District Court for the Southern District of New York after a trial by jury.

Appellant Perez was convicted on both counts of an indictment which charged, in Count 1, that appellant, on or about February 22, 1956, unlawfully sold heroin, and in Count 2, that appellant, along with one Ramon Ramirez, conspired to sell narcotics contrary to law. Sections 173 and 174, 21 U.S.C.A., are the statutes involved. The jury found him guilty on both counts and he was sentenced as a second offender to seven years on Count 1 and five years on Count 2, the sentences to run concurrently.

The appellant's appeal is taken on two grounds: First, that there was insufficient evidence for the jury to find that he knowingly aided and abetted in the sale of narcotics as charged in Count 2; and secondly, that Government's Exhibits 4 and 5 were improperly received in evidence, because on the record they were shown to have been obtained by illegal search and seizure.

From the evidence adduced at the trial it appears that Agent Cerda of the Federal Bureau of Narcotics, acting as an undercover agent, together with a special woman employee of the Bureau, met Ramirez on the morning of February 21, 1956. Ramirez agreed he would attempt to secure a half ounce of heroin for Cerda. Ramirez drove Cerda and the special employee to a Shell gasoline station at 110th Street and Fifth Avenue in a 1956 Mercury coupe, and then to several other places in the neighborhood, but finally indicated he would not be able to make "delivery" that day. Agent Cerda arranged to meet Ramirez the following morning.

On February 22, 1956, Agent Cerda and the special employee met Ramirez as arranged, and Ramirez again drove them around the neighborhood in the same 1956 Mercury, including several stops at the same Shell station. It was later ascertained that appellant Perez worked at this station. When they were at the Shell station that morning Ramirez, after spending ten or fifteen minutes in the office of the station, informed Cerda he would not be able to make the delivery of the heroin until 4:00 o'clock that afternoon.

A little after 4:00 that afternoon Agent Cerda and the special employee were picked up at 110th Street and Broadway by Ramirez. Appellant Perez was driving the 1956 Mercury on that occasion, and this was the first time that the Agent or the special employee saw Perez. Cerda and the special employee got in the car, and after an hour or an hour and a half of driving up and down the streets in the neighborhood, Perez drove to the Shell station referred to above. Cerda testified that at Ramirez' request he, Cerda, counted out $150 to give to Ramirez. The money was handed to Ramirez in the presence of Perez. According to Cerda, Perez and Ramirez then met outside the car at the front bumper, and Cerda saw "an exchange of hands" between Ramirez and appellant.

Ramirez then told Cerda and the special employee to get out of the car, and upon Cerda's inquiring why, Ramirez told him: "He is going to get the stuff." Appellant then drove off alone.

Ramirez then left Cerda and the special employee. About 6:30 that evening Ramirez met Cerda, and it was at this time that Ramirez handed Cerda a package containing heroin in exchange for the balance of the agreed price.

Agents Schrier and Bennett of the Federal Bureau of Narcotics also assigned to the case, kept the 1956 Mercury under surveillance on both February 21st and 22nd. They testified to seeing Perez driving the car on February 22nd at the times testified to by Agent Cerda. Perez was arrested by Agent Schrier in the presence of Agent Bennett on April 4th, 1956, without a warrant. The arrest was made when appellant drove up in the 1956 Mercury coupe used on February 21st and 22nd to the apartment house in which he lived. He informed the narcotics agents that the car belonged to him.

Appellant contends that evidence that he was merely driving his car while Ramirez was engaged in an attempt to secure narcotics is not sufficient of itself to convict him for aiding and abetting, or as a co-conspirator. That may be so. See United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210; and United States v. Falcone, 2 Cir., 109 F.2d 579. However, appellant chooses to ignore or overlook the fact that there were conversations between Agent Cerda and Ramirez about narcotic drugs in appellant's presence as they were driving around in the Mercury. Also to be considered are appellant's general conduct and knowledge that Agent Cerda was attempting to obtain narcotics from Ramirez.

The proof is that when Perez drove the Mercury to the rendezvous with the Government agents on February 22nd, he asked Ramirez if Agent Cerda was "all right." The record also shows that during the times the Government agents were being driven about on that day, Perez stopped at one point. He and Ramirez left the car and walked down the street, one on one side of the street and the other on the opposite side—a peculiar maneuver if appellant was an innocent bystander and wholly ignorant of what was going on. Furthermore, the proof shows that as Agent Cerda was riding with Ramirez and appellant, Ramirez told appellant that he was expecting a load of marihuana from California. Appellant replied: "When you get it we will have to get together."

It is also shown that on this ride Agent Cerda asked Ramirez why he was charging $300 for the heroin when he had sold the "stuff" on a previous occasion for $250. It appears that Ramirez was sitting beside appellant in the front seat while Agent Cerda was in the back of the car. It is a reasonable inference that appellant heard these conversations.

Furthermore the record shows that there was an interval of an hour and a half between the time appellant drove up to where the Government agents were waiting for Ramirez to pick them up, and the time when appellant finally drove into the Shell station where the money was given to Ramirez. The proof is that in this period of time appellant made U-turns in the street; and would pull over to the curb to allow cars to pass him; he kept looking in the rear view mirror, and he would try to come to an intersection just as the light was turning red, speed up and turn the corner. In this hour and a half it appears that appellant covered an area limited to Fifth and Madison Avenues, 108th, 109th and 110th Streets—three square blocks.

That appellant's arrest was legal is beyond question. Validity of an arrest without a warrant by a federal officer is determined by state law. United States v. Di Re, supra, 332 U.S. 589, 68 S.Ct. 222. Under New York law a law enforcement officer may make an arrest without a warrant when a felony has been committed, and the arresting officer has reasonable cause for believing the person to be arrested has committed it. Sec. 177, Code of Criminal Procedure of New York. The two arrest-

ing agents had observed the movements of appellant on February 22nd, the day when the crime for which he was arrested had been committed. A fellow agent who was working on the case with the arresting agents was a participant in the actions resulting in appellant's arrest. See United States v. Williams, 2 Cir., 161 F.2d 835.

■ Exhibit 4 is the loan application for the 1956 Mercury car. It was found in appellant's apartment, which was searched with appellant's consent after his arrest. Appellant alleges the search was illegal because his request to see his wife before being arraigned was conditioned on his allowing the agents to search his apartment. However, the record fails to show that appellant's consent to a search, or the actual search, was a result of coercion or force. The reasonable inference is that since appellant wanted to go up to the apartment to see his wife, the agents wanted his permission to search his apartment at the same time. Appellant seems to have consented readily enough. There is no substance to appellant's claim that Exhibit 4 was obtained through an illegal search.

■ Government's Exhibit 5 was found by Agent Bennett in the glove compartment of the 1956 Mercury when the agent made a search of the car as appellant was being taken to the Federal House of Detention on the day of his arrest. The exhibit is the invoice for the 1956 Mercury, showing the car was sold to appellant for $4,000, listing the various "extras" included in the sale, allowance of $1,514 on a trade-in, and balance due of $3,075. Appellant admitted to ownership of the 1956 Mercury at the time he was arrested. He also stated to the Government agents that he owed $3,000 on it. Even assuming, therefore, there was merit in appellant's contention that a search of the car over a month after the crime was committed could not be justified as a reasonable search, there was no prejudice to appellant in allowing Exhibit 5 into evidence. That a 1956 Mercury is not a car in the low priced field is a fact of common knowledge.

The contrast between appellant's income and the ownership of an expensive new car was brought out in evidence other than Exhibit 5. At most the exhibit was merely corroborative of other evidence, and cumulative with respect to issues collateral to the main issue of participation in the illegal sale of narcotics. Moreover, in view of the proof regarding appellant's conduct, and the statements made in the presence of the Government agents, there was ample direct evidence to support the conviction. In the circumstances Exhibit 5, although relevant, is unimportant.

The judgment of conviction is affirmed.

The judges who heard this appeal feel that they should add a note of appreciation of the fine professional service rendered by Thomas W. Hill, Jr., counsel assigned by the court to represent the appellant.