The **UNITED STATES of America,**
Appellee,

v.

Louis C. VIALE, Marino J. Faliero, Sr., Joseph S. Pinnavia, Louis A. Abbonando, Anthony F. Fino and Nicholas S. Longo, Appellants.

No. 166, Docket 27719.

United States Court of Appeals
Second Circuit.

Argued Dec. 5, 1962.

Decided Jan. 31, 1963.

Charles F. Crimi, Asst. U. S. Atty. (John T. Curtin, U. S. Atty. for Western District of New York, on the brief), for appellee.

Parrino & Cooper, Buffalo, N. Y., for defendants-appellants.

Before LUMBARD, Chief Judge, and SWAN and FRIENDLY, Circuit Judges.

SWAN, Circuit Judge.

Each of the six appellants was convicted after a jury trial on each count of a three count indictment filed June 2, 1961. Count 1 charged the defendants with conspiring to engage in the business of accepting wagers without having paid the special occupational tax required by 26 U.S.C. § 4411, in violation of 18 U.S.C. § 371. Count 2 charged commission of the substantive offense described in the conspiracy count, in violation of 26 U.S.C. § 7262. Count 3 charged failure to file tax returns as required by 26 U.S.C. § 4412, in violation of 26 U.S.C. § 7203.

The trial began March 13, 1962. On March 8, nine months after the indictment, the defendants moved to suppress evidence. The motion was denied after oral argument; and the defendants declined the opportunity offered them by the court to call witnesses. During the trial the defendants moved for judgment of acquittal after the Government rested. This was denied, and the defendants failed to renew their motion at the end of all the evidence. The Government contends that this precludes the appellants from questioning the sufficiency of the evidence to support the judgments of conviction, but as our later discussion will show the contention need be considered only with respect to Faliero. The sentences appealed from were imposed on June 25, 1962.[1] Notice of appeal was filed the following day.

The arrest and indictment of the six appellants was the result of an investigation by Special Agents of the Internal Revenue Service which began about the middle of March 1961 and culminated on May 12 of that year in a raid on adjoining houses in Buffalo, N. Y., known as 19 Allen Street and 111 N. Pearl Street,

both of which were owned by Viale. The Agents conducting the raid had obtained search warrants for both houses, and a warrant for the arrest of Viale. They had no warrants for the arrest of the other appellants. From the undercover investigation conducted by Agent Willis, the Agents knew when they raided the premises that Viale and confederates, whose names they did not know, were engaging in the business of accepting wagers in a room on the second floor, rear, of 19 Allen Street. They knew also that no one at either 19 Allen Street or 111 N. Pearl Street had paid the tax or registered or filed a return from those addresses, as required by the applicable statutes. On raiding the premises, Pinnavia, Abbonando, Longo and Fino were found in the second floor room which was equipped with four telephones, and contained betting slips, racks and other paraphernalia appropriate for a wagering hideout. Faliero was not present; he entered the ground floor of 19 Allen Street some two hours later and upon entry was told by the Agents to go up to the second floor room. Each of these five appellants was interrogated separately by Agent Carbone in an adjoining room and was asked to empty his pockets. Each stated that he was there to visit a sick friend and refused to answer any further questions. Carbone testified that they emptied their pockets voluntarily and that each possessed a key to 19 Allen Street as well as other incriminating matter.

There is no contention by Viale that the warrants for the search of his premises and for his arrest were invalid. Indeed, his guilt was so clearly established by his prior dealings with Agent Willis that no discussion seems necessary. The judgment against Viale is affirmed.

---

1. Appellant Viale was sentenced to imprisonment for one year in an institution to be designated by the Attorney General and was fined $2,000 on counts 1 and 3. On count 2 he was fined $1,000. The prison sentences were to be served concurrently, and the $5,000 of fines were to be paid within 30 days.

Appellant Fino received a sentence identical with Viale's except that the total of his fines was $3,000.

In the case of each of the other four appellants, execution of the prison sentences was suspended, he was placed on probation for five years, and the total of his fines to be paid within 30 days was $3,000.

Each of the other appellants claims that his arrest was unlawful and consequently the taking of his personal effects cannot be justified as incidental to a lawful arrest. Except as to Faliero, we hold the arrest valid and the incidental taking of personal effects justified.

■■ The Government can point to no federal statute authorizing agents employed "for the administration and enforcement of the internal revenue laws", 26 U.S.C. § 7803(a), as these agents were, to make an arrest without a warrant, unless authority can be found in 26 U.S.C. § 7608, and frankly admits there is "some question" whether this section is applicable to the enforcement of the wagering tax laws. We hold that the section is not applicable.[2] But the inapplicability of § 7608 does not necessarily mean that the Agents had no authority to arrest without a warrant in the circumstances disclosed, since the section does not "change or in any way limit the then existing authority of internal revenue agents to make arrests or conduct searches as an incident thereto." United States v. Murphy, 3 Cir., 290 F.2d 573, 575.

■ United States v. Di Re, 332 U.S. 581, 589, 68 S.Ct. 222, 92 L.Ed. 210, makes clear that "[i]n absence of an applicable federal statute the law of the state where an arrest without warrant takes place determines its validity." Therefore we turn to the law of New York.[3]

■ Two provisions of the New York Code of Criminal Procedure give authority to arrest without a warrant. The first is § 177 relating to arrests by any "peace officer." In United States v. Perez, 2 Cir., 242 F.2d 867, cert. denied 354 U.S. 941, 77 S.Ct. 1405, 1 L.Ed. 2d 1539, it was held that § 177 authorized arrests in New York by agents of the Federal Bureau of Narcotics, apparently on the theory that this section applies to anyone who is a "law enforcement officer." 242 F.2d at 869. This decision, for which no authority was cited other than § 177 itself, is plainly wrong. Section 960 of the Code of Criminal Procedure states that "Unless when otherwise provided, the term 'peace officer' signifies any one of the officers mentioned in section one hundred and fifty-four." And § 154—which the court in Perez did not cite—contains a long list of "peace officers" which does not include agents of the Internal Revenue Service, or any other federal agents. Moreover, a New York court has held that a federal revenue agent is not a "peace officer" within § 154. People v. Chesnik, 123 Misc. 509, 205 N.Y.S. 146. We hereby expressly overrule Perez.

■ The second provision relied upon by the Government is § 183 of the N.Y. Code of Criminal Procedure. This gives a "private person" authority to arrest another "for a crime, committed or attempted in his presence," or "[w]hen the person arrested has committed a felony, although not in his presence."

2. Section 7608 relates to internal revenue agents "charge[d] with the duty of enforcing any of the criminal, seizure, or forfeiture provisions of subtitle E or of any other law of the United States pertaining to the commodities subject to tax under such subtitle", and authorizes such an agent "in respect to the performance of such duty, [to] make arrests without warrant for any offense against the United States committed in his presence, or for any felony cognizable under the laws of the United States if he has reasonable grounds to believe that the person to be arrested has committed, or is committing, such felony". Subtitle E has

to do with the enforcement of federal statutes other than those which appellants are charged with violating, namely, conspiracy (18 U.S.C. § 371), occupational tax (subtitle D, 26 U.S.C. § 4411), and registration and returns (subtitle D, 26 U.S.C. § 4412).

3. We realize that problems may arise if the state law is either more or less liberal than federal law as to the extent that search may be performed as an incident to lawful arrest. But since there appears to be no difference between New York and federal law in this regard, we need not consider what the consequences would be if a difference existed.

Relying on Application of Fried, S. D.N.Y., 68 F.Supp. 961, the appellants contend that even if § 183 applies, it gives no authority to search the person arrested. In Fried, on facts very similar to those presented here, Judge Rifkind declared, at page 964, that "a private person could in no event make a search incidental to an arrest." This holding, however, is contrary to our decision in United States v. Park Avenue Pharmacy, 2 Cir., 56 F.2d 753, 756, and also to Coplon v. United States, 89 U.S. App.D.C. 103, 191 F.2d 749, 754, cert. denied 342 U.S. 926, 72 S.Ct. 363, 96 L. Ed. 690. The rationale that justifies searches incident to lawful arrests—as outlined in United States v. Rabinowitz, 339 U.S. 56, 60–61, 70 S.Ct. 430, 94 L. Ed. 653—would seem to apply with equal force whether the arrest is made by an officer or a private citizen. If the arrests were valid under § 183, the searches incidental thereto were valid also.

As above noted, § 183 permits a private person to arrest a person who has committed a felony "although not in his presence." Although the indictment could have charged the offenses as felonies, 26 U.S.C. § 7201, it charged them as misdemeanors. Since there has thus been no judicial finding that these appellants in fact committed felonies, we shall assume that the validity of the arrests must be determined on the basis of the Agents' authority acting as private persons, to arrest for misdemeanors committed in their presence. Cf. United States v. Di Re, 332 U.S. at 591–592, 68 S.Ct. at 227.

■ Preliminarily, it is necessary to determine what is meant by "presence" and by "arrest," since the misdemeanor must be committed in the "presence"[4] of the arrestor and the search of the arrestee must be incidental to his "arrest." It is now clear under New York law that one person may without a warrant justifiably arrest another who commits a misdemeanor in his "presence" only when the arrestor actually observed acts which were "in themselves sufficiently indicative of a crime being in the course of commission * * *"; unless this be true, the crime was "not committed in the arresting officer's presence * * *." People v. Moore, 11 N.Y.2d 271, 272, 273, 228 N.Y.S.2d 822, 823, 824, 183 N.E.2d 225, 226. See also People v. Esposito, 118 Misc. 867, 194 N.Y.S. 326, 333, where it was said that the arrestor must have perceived "indications of the commission of the offense sufficient to induce reasonable belief of the fact."[5] In short, it is not sufficient to justify an arrest by a private citizen without warrant that the arrestee be subsequently shown to have been engaged in committing a misdemeanor at the moment of the arrest; the arrestor must have had reason to be aware at that time of the commission of the crime.

■ To ascertain the meaning of "arrest," we turn first to the definition contained in the New York Code of Criminal Procedure. Section 167 states that "arrest is the taking of a person into custody that he may be held to answer for a crime." Section 171 adds that "[a]n arrest is made by an actual re-

---

4. For a discussion of the meaning of the "presence" requirement at common law and under statutes like New York's § 183, see 1 Harper & James, Torts, p. 282; Restatement, Torts, § 119, comment on clauses (c) and (d).

5. In Esposito and Moore, the arrestors were police officers, and the cases thus dealt with the authority afforded a "peace officer" by N.Y.Code Crim.Proc. § 177 to arrest without a warrant "[f]or a crime, committed or attempted in his presence." As pointed out above, however, we are dealing with the arrests in this case on the assumption that the officers here acted as "private persons" within the terms of N.Y.Code Crim.Proc. § 183. The relevant language of the two sections is identical, and it has been held that the rights of peace officers and private persons to arrest without warrant for misdemeanors committed within their presence are equal. People v. Averill, 124 Misc. 383, 208 N.Y.S. 774. Thus we are justified in using cases decided under § 177 as precedents under § 183.

straint of the person of the defendant, or by his submission to the custody officer." And in Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134, the Court declared that:

"When the officers interrupted the two men and restricted their liberty of movement, the arrest, for purposes of this case, was complete." 361 U.S. at 103, 80 S.Ct. at 171.

Accordingly, we hold that the arrests of Fino, Pinnavia, Abbonando and Longo took place at the moment when they submitted to the custody of the Agents in the upper room at 19 Allen Street; Faliero's arrest came when he entered 19 Allen Street and was ordered by an Agent to go upstairs. The validity of each arrest must, therefore, depend upon whether the arresting Agents had reasonable cause to believe that each appellant was committing a misdemeanor at the moment of his arrest.

■ With respect to Fino and Pinnavia, who were using the telephones when the Agents entered the room, it is easy to hold that the Agents had reasonable cause to believe that these appellants were engaging in the business of accepting wagers illegally, since the Agents knew that no one from the premises had paid the tax, registered, or filed a return. As to Abbonando and Longo, who were in the same room, we think the Agents had reasonable cause to believe that they were engaged in a conspiracy with Fino and Pinnavia. Accordingly, we hold that these four arrests, although made without warrants, were legal under § 183 of the N.Y. Code of Criminal Procedure and that the searches incidental to these arrests were legal. United States v. Festa, D.Mass., 192 F.Supp. 160, is not to the contrary, for there the Government conceded that the defendant was not committing a crime when arrested; there has been no such concession here.

■ The situation as to appellant Faliero is different. He entered 19 Allen Street about two hours after the commencement of the raid, through a door on the ground floor. Upon his en-

try he was intercepted by an Agent and told to go upstairs. These facts are insufficient to support a finding that he was then committing or attempting to commit a misdemeanor. On this record, we think the Agents could not have had reasonable cause to believe he was. The Government's argument that Faliero consented to a search of his person—on which was found incriminating evidence—defies ordinary common sense. Consent to search is not to be lightly inferred. United States v. Page, 9 Cir., 302 F.2d 81, 83–85; cf. United States v. Dornblut, 2 Cir., 261 F.2d 949, 950–951, cert. denied 360 U.S. 912, 79 S.Ct. 1298, 3 L.Ed.2d 1262. Without such incrimination, the evidence against Faliero was insufficient to go to the jury.

■ The Government argues that, nevertheless, the indictment cannot now be dismissed as to Faliero because of appellants' failure to renew their motion for acquittal at the close of their own case. It is generally true that a defendant must move for acquittal at the close of all the evidence, in order to preserve on appeal any question as to the sufficiency of the evidence. Rosenbloom v. United States, 8 Cir., 259 F.2d 500, cert. denied 358 U.S. 929, 79 S.Ct. 315, 3 L.Ed.2d 302; Cooper v. United States, 5 Cir., 256 F.2d 500; Picciurro v. United States, 8 Cir., 250 F. 2d 585. However, procedural deficiencies will be disregarded when there is manifest error and it is necessary to prevent a miscarriage of justice. Corbin v. United States, 10 Cir., 253 F.2d 646, 648. Since the motion, if made, would probably have been denied on the basis of the ruling as to the admissibility of evidence found on his person, failure to renew the motion at the close of the evidence was excusable. In order to prevent a miscarriage of justice as to Faliero, we reverse his conviction.

■ The remaining contentions of the other appellants can be disposed of briefly. They argue that the court below denied their pretrial motion to suppress because their motion papers were insufficient to show standing, for lack

of a definitive statement of which evidence each appellant wished suppressed, and that this was error under Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697. As the Government points out, the court at argument on the motion offered appellants a chance to put on witnesses, and the offer was refused. In view of this, it would seem that the court held the appellants had "standing" to object, but were unwilling to support their motion with evidence. We see no error in such ruling.

Appellants argue that the Agents, in making forcible entry of both premises, exceeded their authority. The entry at 19 Allen Street was made only after proper announcement, and was in compliance with 18 U.S.C. § 3109.[6] Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332, on which appellants rely, is distinguishable. There is no question that the entry into 111 N. Pearl Street by two of the Agents was legal. They knocked on the rear door, announced their authority and purpose, and were admitted. A second, later entry was made by Agents who broke in the front door, apparently without announcing their authority and purpose. Inasmuch as the earlier action on the part of the Agents at the rear door was legal and the invasion of the privacy protected by the Fourth Amendment and 18 U.S.C. § 3109 was both complete and proper, we need not pass on the legality of the second follow-up entry on the same warrant. It would not invalidate the prior entry. Furthermore, the four items seized at 111 N. Pearl Street which were admitted into evidence [7] were found by, and introduced through, the Agent whose entry was proper.[8] We hold the evidence thus admitted was not illegally seized.

The appellants also complain that the trial judge failed until the end of the second day of trial to admonish the jurors not to discuss the case among themselves. It has never been the law of this circuit that the trial judge must admonish the jurors not to discuss the case among themselves, although it has been the practice of most of the judges to suggest that it is advisable to refrain from such discussion until the case is concluded. Compare Myres v. United States, 8 Cir., 174 F.2d 329. In any event, we hold that the trial judge did not commit any error in this matter, especially since counsel did not request such an instruction, and since such an instruction was in fact given the second day of the trial.

Appellants contend that Judge Henderson interfered with the examination of Government witnesses by asking repeated questions, and read his charge too rapidly. We can find in the record no objection made by appellants to either of these alleged errors of the trial judge. Apparently they were afterthoughts, for purposes of appeal. The record discloses no error.

Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278, held that admission of a post-conspiracy admission is not error, provided the trial court takes adequate precautions to prevent the jury from using the evidence against co-defendants. In the instant

---

6. One of the Agents stated in a loud voice "Federal police officer with a search warrant." After "possibly a minute or two, maybe more," having heard no answer or movement, the Agents forced the door. We find this adequate compliance with 18 U.S.C. § 3109, which states, in part:
"The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if after notice of his authority and purpose, he is refused admittance * * *."

7. Several additional items were listed on the search warrant as having been found at 111 N. Pearl, but the Government did not seek to introduce them.

8. As to one item, a telephone found in a cellar, the Agent who entered properly testified, "I actually put the information on the bottom of this. It also contains the initials, J. M. D. [an Agent who entered through the front door] on [this exhibit;] * * * it contains my writing and my initials."

case, testimony was heard, without objection, of statements made by the defendant Fino. The trial judge later charged on his own motion that such statements could not be considered as evidence against other defendants. Hence there was no error.

■ The contention is made that it was error to allow an Agent to testify as to the nature of certain writings found on the premises after he had failed to qualify as an expert. The record demonstrates that the only "writings" let in through the testimony of Agent Balen, to whom appellants refer, consisted of two racing sheets (available to the public at large) and a newspaper. Certain notes made by Balen, while he took bets over the telephone at 19 Allen Street for three hours after the raid, were not allowed in; they were used by Balen only to refresh his recollection as to the substance of the telephone calls, as to which he testified orally and without comment, for the court refused to qualify him as an expert in off-track wagering. This allegation of error is baseless.

■ Appellants claim that no copy of the Government's requests to charge was ever given them in accordance with F.R. Crim.P. 30. Appellants admit their inability to prove this,[9] and in any event the Government's requests were substantially included in the actual charge given by the court which went without exception. There is no error here.

■ Appellants' final argument is that the refusal of the court to charge their requests 2 and 6 constituted error. Request 6 dealt with circumstantial evidence. Although the court's charge on this issue was not too full, it was perfectly acceptable under Holland v. United States, 348 U.S. 121, 139–140, 75 S.Ct. 127, 99 L.Ed. 150, since the charge was exceedingly thorough on the issue of reasonable doubt. Request 2 asked the court to instruct the jury on the rule of Ingram v. United States, 360 U.S. 672,

79 S.Ct. 1314, 3 L.Ed.2d 1503, which held, in a numbers case, that two defendants, minor employees of other defendants, being not themselves liable for the tax, were not liable for conspiracy to avoid the tax, where they did not know their employer was liable for it. That case is not this case. Here, the Government proceeded on the theory that each appellant was liable for the tax. Thus appellants' requested charge 2 was properly refused, as well as requested charge 6.

The convictions of Viale, Pinnavia, Abbonando, Fino and Longo are affirmed; the conviction of Faliero is reversed, and the indictment order dismissed as to him.

---

**9.** See appellants' brief, p. 27.