■ ANTHONY MORRELLO, Respondent, v SARATOGA HARNESS RACING, INC., Appellant.—Appeal from a judgment of the Supreme Court, entered February 27, 1978 in Montgomery County, upon a verdict rendered at a Trial Term, in favor of plaintiff. Plaintiff is employed as a construction inspector by the New York State Department of Transportation. He is also a licensed owner, trainer and driver of trotting and pacing horses. As a result of an incident at defendant's facility on April 7, 1971, plaintiff, in an action for false arrest, has obtained a verdict against defendant for $750 in compensatory damages and $5,000 in punitive damages. The relevant and, for the most part, uncontradicted facts are amply set forth in the decision of this court when the matter was before us on an earlier appeal (50 AD2d 950). On that occasion, we upheld the judgment appealed from insofar as it dismissed the cause of action for malicious prosecution on the ground there was no evidence which would allow a jury to find that defendant was guilty of malice in instigating the criminal action against plaintiff. However, we directed a new trial on the cause of action for false arrest because the trial court had erroneously placed the burden of establishing the unlawfulness of a warrantless arrest on plaintiff (cf. *Broughton v State of New York,* 37 NY2d 451). After the retrial, some six years after the event, the record now contains two uncorroborated epithets attributed to defendants' agents upon which the trial court relied, in large part, to sustain the jury's award of punitive damages. With the exception of these two statements substantially the same evidence was advanced during the prior trial in which this court found no malice—albeit on a different cause of action—and the fact that these slurs were somehow belatedly recalled at the time of the new trial seriously diminishes the effect of such testimony. It simply does not possess sufficient probative quality to justify a punitive award (cf. *Guion v Associated Dry Goods Corp. [Lord & Taylor Div.],* 43 NY2d 876; *Walker v Sheldon,* 10 NY2d 401). Apart from this deficiency involving an element of damages, there is a more basic flaw in plaintiff's case which, in our opinion, precludes any recovery. The presumptive unlawfulness of a warrantless arrest by a private citizen is overcome if it is shown that the plaintiff had, in fact, committed an offense in defendant's presence (CPL 140.30; cf. *Smith v County of Nassau,* 34 NY2d 18, 23; *McLoughlin v New York Edison Co.,* 252 NY 202). While justification is ordinarily a matter of affirmative defense, here the examination of plaintiff's witnesses demonstrates that he was committing the crime of criminal trespass at the time of his arrest. Accordingly, there was no rational view of the evidence that would permit the jury to find in his favor and defendant's motion to dismiss the complaint at the close of plaintiff's evidence should have been granted. Whether plaintiff's arrangement with defendant was some form of tenancy, a license or a privilege is uncertain, but it is plain that the relationship was at defendant's will and sufferance. It is equally plain that sometime before March 29, 1971, he was requested to remove himself and his horses from the raceway. He failed to comply and on that date the request was repeated in written form, politely advising him that his horses were not being assigned stalls for the approaching season. Again he failed to comply, and on April 7, 1971, he was personally served with another written notice barring him from defendant's premises and advising him that a violation of the directive

would constitute criminal trespass. He left the premises and consulted with an attorney who apparently told him that his removal could only be accomplished through civil proceedings. The arrest occurred following his return to the facility later that afternoon. Section 140.10 of the Penal Law provides, in part, that "A person is guilty of criminal trespass * * * when he knowingly enters or remains unlawfully * * * upon real property which is * * * enclosed in a manner designed to exclude intruders." Knowingly is defined as follows: "A person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists." (Penal Law, § 15.05, subd 2.) Lastly, subdivision 5 of section 140.00 of the Penal Law specifies, in part, that "A person 'enters or remains unlawfully' in or upon premises when he is not licensed or privileged to do so. A person who, regardless of his intent, enters or remains in or upon premises which are at the time open to the public does so with license and privilege unless he defies a lawful order not to enter or remain, personally communicated to him by the owner of such premises or other authorized person." Since plaintiff did not prove that his original arrangement with defendant could not be revoked at will, and since, by his own account, he was fully cognizant of the foregoing communications, it necessarily follows that he committed a criminal trespass upon his return to defendant's premises. His acquittal of such a charge does not alter this conclusion, nor can it be avoided by resort to the advice he received from his attorney. A charge in a criminal action must be proven beyond a reasonable doubt and, therefore, a not guilty verdict in such a proceeding does not conclusively establish the factual innocence of the accused. The issue of whether plaintiff was committing a criminal trespass was not determined by the outcome of that prosecution and his reliance on legal advice cannot erase his "knowledge" of the pertinent circumstances. As the proof was developed in this trial, there was nothing to suggest that defendant's communications were anything other than lawful orders (see *People v Licata,* 28 NY2d 113; *People v Brown,* 25 NY2d 374) and plaintiff could not honestly believe he was licensed or privileged to enter defendant's facility (compare *People v Basch,* 36 NY2d 154, 159). Perhaps he could regain access through legal process, but a license or privilege to then enter was unquestionably lacking. A clear preponderance of evidence established that plaintiff was committing a crime at the time of his arrest and no rational jury could arrive at a contrary determination. Judgment reversed, on the law and the facts, and complaint dismissed, without costs. Kane, Staley, Jr., and Main, JJ., concur.

Greenblott, J. P., and Mikoll, J., dissent and vote to affirm in the following memorandum by Greenblott, J. P. Greenblott, J. P. (dissenting). Plaintiff, a licensed owner, trainer and driver of trotting and pacing horses, had two horses in stalls at defendant's racetrack for which he paid a daily rental. On March 31, 1971 plaintiff received a letter from defendant requesting that he remove his horses by April 4, 1971. Plaintiff testified that he then had a conversation with defendant's racing secretary, Harold Haswell. Haswell refused to tell him why he was not given stall space and when plaintiff persisted, Haswell said, "Out, out Guinea. Out of my office." Plaintiff continued to tend his horses. As he was entering the stable gate on April 7, 1971, he was stopped by one of defendant's guards who gave him a letter which stated that plaintiff was barred from defendant's property because his presence "[was] not desired." Plaintiff then left the track and contacted his attorney. Haswell informed the attorney that he made the rules for the track and that if plaintiff "steps one foot in this track, I'll have the son-of-a-

bitch in jail so fast his head will spin." Plaintiff's attorney informed defendant that proper procedures existed for evicting tenants and that plaintiff would sue defendant if arrested. Plaintiff returned to the track and while tending his horses he was told to leave. When he refused, defendant called the police and told them that plaintiff was under arrest. He was then taken into custody and charged with criminal trespass in the third degree (Penal Law, § 140.10). Following his acquittal by a jury, plaintiff instituted a suit for false arrest and malicious prosecution. The trial court dismissed the action but, on appeal, we reversed and ordered a new trial on the false arrest cause of action (Morrello v Saratoga Harness Racing, 50 AD2d 950). The second trial resulted in a jury verdict in favor of plaintiff in the sum of $750 in compensatory damages and $5,000 in punitive damages. In our view, there should be an affirmance. "A private arrest is invalid unless the person arrested has in fact committed the crime for which the arrest was made" (Jacques v Sears, Roebuck & Co., 30 NY2d 466, 474). Moreover, a private citizen who makes an arrest does so at his peril, and if the person arrested did not in fact commit the crime for which he is arrested, the person who arrests him is liable even if he acts in good faith or has probable cause to make the arrest (CPL 140.30; see Scanlon v Flynn, 465 F Supp 32, 37-38). Here, plaintiff was acquitted of the crime for which he was arrested and the dispositive question, therefore, was whether the arrest was made by the police or by agents of the defendant. The trial court's charge to the jury that the defendant's security officers were private citizens became the law of the case, since there was no objection to the charge (see Ruff v Snyder, 48 NY2d 756). The record fully supports the jury's finding that the arrest was effected by defendant's security officers. The majority apparently does not accept the proposition of law set forth above, arguing that since the standard of proof in the criminal proceeding is guilt beyond a reasonable doubt, plaintiff's acquittal did not conclusively establish his factual innocence. Assuming, but not conceding, that the majority's position is correct, in our view there is a preponderance of evidence in the record to support the jury's verdict that plaintiff did not in fact commit the crime for which he was arrested. A person is guilty of criminal trespass in the third degree when he "knowingly enters or remains unlawfully in a building or upon real property" (Penal Law, § 140.10). However, one "who honestly believes that he is licensed or privileged to enter, is not guilty of any degree of criminal trespass" (People v Basch, 36 NY2d 154, 159). Based upon plaintiff's undisputed testimony (the defendant chose to rest at the close of plaintiff's case), the jury was entitled to conclude that plaintiff had an honest belief of his right to enter and remain upon defendant's premises. At the time of his arrest, plaintiff was in the same place doing the same thing he had done on every other day for the past four years. Plaintiff left when he first received defendant's letter and returned only after consulting with his lawyer. Further, evidence of plaintiff's acquittal was properly admitted to refute defendant's claim that plaintiff was criminally trespassing (see Broughton v State of New York, 37 NY2d 451, 458). Whether plaintiff was criminally trespassing at the time of his arrest was a question of fact for the jury. This issue has been resolved in plaintiff's favor by the jury herein and in the criminal action, whose determinations the majority now unwarrantedly characterize as irrational. Questions of credibility are for the jury and the proof must be viewed most favorably to the verdict (Hannan v Schmitt, 18 AD2d 854; see Sherman v Smith, 23 AD2d 642). It was for the jury to accept or reject plaintiff's testimony, and this court may not disturb its verdict where, as here, it has a "rational basis" (Brockway v Wase, 75 AD2d

655). Moreover, subdivision 5 of section 140.00 of the Penal Law, erroneously relied upon by the majority, is inapplicable to the facts of this case. Defendant did not have absolute immunity from having to justify the exclusion of plaintiff, an owner and trainer whom the State has deemed fit to license (see *Jacobson v New York Racing Assn., 33* NY2d 144, 150). Thus, defendant could not convert plaintiff's otherwise legitimate presence on its premises into a criminal act by arbitrarily telling plaintiff that he was barred. The majority concludes that plaintiff's arrangement with defendant was "uncertain", but, in our view, there is no question but that plaintiff was a licensee. Accordingly, he could be evicted only through a special proceeding after first being served with a 10-day notice to quit (see Real Property Actions and Proceedings Law, § 713, subd 7; 14 Carmody-Wait 2d, NY Prac, § 90.117, p 93). Finally, punitive damages were properly awarded since, unlike the first trial, plaintiff introduced sufficient evidence of malice. Haswell's ethnic slurs, the intransigence of defendant's agents, the arbitrary manner in which plaintiff's exclusion and arrest were effected, and the immediate resort to arrest without even considering the possibility of pursuing civil remedies, were adequate indications from which the jury could conclude that defendant was motivated by ill will towards plaintiff. The majority implies that ethnic slurs must be corroborated in order to sustain an award of punitive damages. However, we have been unable to find authority for such a proposition. The fact that this proof was uncorroborated and was presented at the second trial raised credibility questions for the jury. Thus, there is absolutely no basis for the majority's conclusion that as a matter of law such proof did not provide a predicate for punitive damages. We, therefore, respectfully dissent and vote to affirm.